EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
RAFAEL VÉLEZ LÓPEZ, CARMELO MARTELL BARBOSA
y GREGORIO MÉNDEZ MORALES, acusados y apelantes.

*Número:* 16905. *Resuelto:* 18 de septiembre de 1961.

*S. L. Lagarde Garcés, Luis E. García Benítez* y *José Rafael Gelpí,* abogados de los acusados-apelantes; *J. B. Fernández Badillo, Procurador General de Puerto Rico* y *Arturo Estrella, Subprocurador General,* abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado Señor Pérez Pimentel, como Presidente de Sala, y los Jueces Asociados Señores Serrano Geyls y Rigau.

488

El Juez Asociado Señor Serrano Geyls emitió la opinión del Tribunal.

 El apelante nos plantea varias cuestiones, todas relacionadas con la orden de allanamiento. Sostiene, en primer término, que dicha orden es nula por haberse expedido a nombre y por autoridad del "Estado Libre Asociado de Puerto Rico" en lugar de "El Pueblo de Puerto Rico" como, a su juicio, exigen la Sección 10 de la Ley de Relaciones Federales y el Artículo VI, Sección 18 de la Constitución del país.

En su parte pertinente, [1] la citada Sección 10 provee que "todas las acciones criminales o penales en los tribunales locales se instruirán a nombre y por autorización de 'El Pueblo de Puerto Rico'." El Artículo VI, Sección 18 de la Constitución repite el mismo lenguaje, prácticamente a la letra: "Toda acción criminal en los tribunales del Estado Libre Asociado de Puerto Rico se instruirá a nombre y por autoridad de 'El Pueblo de Puerto Rico' mientras otra cosa no se dispusiere por ley."

 Nos dice el apelante que las citadas provisiones son aplicables a una orden de allanamiento porque ésta "por su esencia y naturaleza es un procedimiento criminal" y "resulta ser una diligencia judicial que se invoca en el derecho en ayuda a la persecución de delitos". Aun en la hipótesis de que tales manifestaciones sean correctas, no procede aceptar el planteamiento del apelante. Lo que las citadas disposiciones exigen es que "toda acción criminal" se instruya a nombre y por autoridad de "El Pueblo de Puerto Rico". Ese lenguaje claramente no puede referirse a otros pasos que sean anteriores al comienzo de una "acción criminal".

---

[1] El texto completo es el siguiente: "Todas las diligencias judiciales se harán a nombre de 'Estados Unidos de América, S.S. el Presidente de los Estados Unidos', y todas las acciones criminales o penales en los tribunales locales se instruirán a nombre y por autoridad de 'El Pueblo de Puerto Rico'; y todos los funcionarios deberán ser ciudadanos de los Estados Unidos, y, antes de entrar en el desempeño de sus respectivas funciones, prestarán juramento de sostener la Constitución de los Estados Unidos y las leyes de Puerto Rico".

 Obsérvese que la Sección 10 contiene dos requisitos. El primero obliga a "hacer" "todas las diligencias judiciales" a nombre de los "Estados Unidos de América, S.S. el Presidente de los Estados Unidos", y el segundo a "instruir" todas las "acciones criminales o penales" a nombre de "El Pueblo de Puerto Rico". Las claras diferencias entre las palabras usadas en las dos cláusulas indican que el ámbito de la segunda exigencia es mucho más estrecho que el de la primera. El texto original inglés es aun más claro. Dispone que "all *judicial process* shall run in the name of 'United States of America, S.S., the President of the United States', and all *penal or criminal prosecutions* in the local courts shall be conducted in the name and by the authority of 'The People of Puerto Rico'." (Enfasis suplido.) Las palabras "penal or criminal prosecutions", según se utilizan en la citada Sección 10, tienen un significado muy conocido en la experiencia norteamericana: se refieren a la acusación formal presentada contra un ofensor, mediante cualquiera de las varias maneras establecidas en el procedimiento criminal. *Donnelly* v. *People ex rel Bush*, 52 Am. Dec. 459 (Ill. 1850); *Johnson* v. *Scaboard Airline Ry.*, 52 S.E. 644, 646 (S.C. 1905); *State* v. *Cruse*, 94 So. 906, 907 (La. 1922); *People* v. *Miller*, 10 N.E.2d 896 (Ill. 1937). Cf. *Thacker* v. *Marshall*, 331 P.2d 488, 492, n. 4 (Okla. 1958); *Sigmon* v. *Commonwealth*, 105 S.E.2d 171, 178 (Va. 1958);[2] *Rosebud County* v. *Flinn*, 98 P.2d 330, 333 (Mont. 1940). Por el contrario, la frase "diligencias judiciales" ("judicial process") tiene un significado mucho más amplio y comprende, desde luego, una

---

[2] En esta sentencia se define el término "prosecution" como "el medio adoptado para traer a un supuesto criminal a la justicia y castigarlo, siguiendo el debido curso de la ley, e incluye una serie de procedimientos desde el momento en que se hace la acusación formal al jurarse un mandamiento, la presentación de una acusación por el gran jurado (indictment) o por el fiscal (information), el juicio y la sentencia final". (Pág. 178.)

orden de allanamiento *McAdoo* v. *State*, 253 Pac. 307, 308 (Okla. 1927); *Stewart* v. *State*, 111 P.2d 200, 201 (Okla. 1941).

 Independientemente de lo que para diversos propósitos se entienda es el comienzo de un "proceso criminal"—Arts. 4 y 5 del Código de Enjuiciamiento Criminal (34 L.P.R.A. secs. 4 y 5); *Pueblo* v. *Rivera*, 9 D.P.R. 403, 408 (1905); *Pueblo* v. *Capestany*, 37 D.P.R. 586, 595 (1928); *Pueblo* v. *Báez*, 40 D.P.R. 15, 18 (1929); *Pueblo* v. *Lugo*, 58 D.P.R. 183 (1941); *Rivera Escuté* v. *Delgado*, 80 D.P.R. 830, 850 (1958) —no es correcto afirmar que se ha "instruido" una "acción criminal" ("prosecution") cuando todo lo que existe es una orden de un magistrado, en la cual no se acusa a nadie de delito, y que sirve exclusivamente para autorizar el allanamiento de un lugar porque existe causa probable, apoyada en una declaración jurada, de que en dicho lugar se encuentra propiedad (1) "robada o estafada"; (2) o utilizada "como medio para cometer un delito grave"; (3) o para ser utilizada "como medio para cometer un delito público"; o (4) se encuentra cierta clase de propiedad en poder de cualquier persona que no fuere su dueño con la intención de venderla, negociar con ella o defraudar a su dueño. Art. 502 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 1812); Anderson, *"Wharton's Criminal Procedure"* 1957, pág. 139. Precisamente del resultado del allanamiento dependerá, la mayor parte de las veces, que pueda o no instruirse una "acción criminal", Anderson, *op. cit.* pág. 125. Por consiguiente, aun en la dudosa hipótesis de que una orden de allanamiento sea de naturaleza criminal, cf. *Pueblo* v. *Pieras*, 72 D.P.R. 779, 783 (1951); *Pueblo* v. *Yulfo*, 71 D.P.R. 820, 822 (1950), bajo ningún concepto puede considerarse que por medio de ella se "instruye" una "acción criminal".

 No milita contra esta conclusión el hecho de que en los artículos pertinentes del Código de Enjuiciamiento Criminal,

según fueron transcritos en la edición de las *Leyes Anotadas de Puerto Rico* (34 L.P.R.A. secs. 1811 y 1817) se hubiese conservado la fraseología original que exigía que las órdenes de allanamiento se expidieran a nombre de "El Pueblo de Puerto Rico". Se trata de una omisión involuntaria o de una interpretación errónea, ya que el Artículo IX, Sección 4 de nuestra Constitución provee que "El Estado Libre Asociado de Puerto Rico será sucesor de El Pueblo de Puerto Rico a todos los efectos. . ." Debió hacerse el cambio correspondiente en dichos artículos como se hizo en otros del Código. (³)

 Sostiene el apelante, en segundo término, que la orden de allanamiento es nula porque se omitieron de ella las letras "SS" en violación de lo dispuesto en la Sección 10 de la Ley de Relaciones Federales. Esta provee, como ya hemos visto, que "Todas las diligencias judiciales se harán a nombre de 'Estados Unidos de América, SS el Presidente de los Estados Unidos'." En la orden que examinamos se hizo constar lo siguiente: "Estados Unidos de América, el Presidente de los Estados Unidos, el Estado Libre Asociado de Puerto Rico".

Es correcta la norma básica, en la cual se apoya el apelante, que demanda cumplimiento cabal de los requisitos procesales que se exigen para expedir órdenes de allanamiento. *Pueblo* v. *Rivera*, 79 D.P.R. 742, 754 (1956). Pero esa norma no debe usarse para anular una orden cuando se trata de una omisión leve y sin importancia alguna. Habiéndose hecho constar en la orden las palabras "Estados Unidos de América, el Presidente de los Estados Unidos" se cumple a cabalidad con el requisito y los propósitos de la Sección 10, y la omisión de las letras "SS" (que meramente significan *scilicet* o "a saber") aunque indeseable, es de tal naturaleza

---

(³) Hemos también examinado el debate constitucional sobre este asunto, *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, pág. 795, y tampoco hay nada en él que sostenga la interpretación que sugiere el apelante.

trivial y cabalística que no debe por sí sola ser suficiente para anular la orden. *Seay* v. *Shrader*, 95 N.W. 690, 691 (Neb. 1903). Otros errores mecánicos de mayor importancia se han considerado insuficientes para ese propósito. *Pera* v. *United States*, 11 F.2d 772, 773 (Cir. 9. 1926) ; *Baker* v. *Commonwealth*, 264 S.W. 1091, 1092 (Ky., 1924) ; *Bell* v. *State*, 88 A.2d 567, 568 (Md. 1952) ; Varon, *Searches, Seizures and Immunities*, 1961, pág. 362; cf. *McCord & Mercantile Co.* v. *Glen*, 21 Pac. 500, 501 (Utah, 1889) ; *Babcock* v. *Kuntzsch*, 32 N. Y. Supp. 587 (1895).

■ Como tercer fundamento de error, el apelante nos dice que la declaración jurada del agente López contiene sólo "conclusiones" porque expresa que los acusados se pusieron a cotejar, contar y amarrar paquetitos, tickets o boletos de "boli-pool" clandestino en distintos colores. Lo cierto es que en dicha declaración el agente López describe adecuadamente una caseta y su localización y afirma que le consta de propio conocimiento que Rafael Vélez y Carmelo Martell "tienen en su posesión y manipulan bancas de boli-pool clandestinas compuestas las mismas de tickets o boletos de boli-pool clandestinos en distintos colores y con números de tres cifras impresos y de listas con números de tres cifras relacionados con el negocio ilegal de boli-pool". Luego añade que tiene conocimiento propio porque en determinada fecha y hora vio a esas personas en dicha caseta "cotejar, contar y amarrar en paquetitos tickets de boli-pool clandestinos de distintos colores los cuales paquetitos de boli-pool iban separando aparte y hacían apuntes en listas números de tres cifras de los que se usan para el juego ilegal de boli-pool clandestino". Luego describe el juego ilegal de la bolita o boli-pool y solicita se expida la orden de allanamiento. Esa declaración jurada es, sin duda, suficiente y se ajusta a los requisitos de la ley y la jurisprudencia. *Pueblo* v. *Rivera*, supra, págs. 748–751; *Pueblo* v. *Yulfo*, supra.

██ Se impugna también la orden de allanamiento porque no está dirigida específicamente a un agente de justicia y por estar dirigida en términos generales sin expresar por su nombre la persona o agente que habría de diligenciarla. Se funda en los artículos 501 y 506 del Código de Enjuiciamiento Criminal en los cuales se estipula que la orden debe dirigirse a "un agente de justicia". Ninguno de los artículos del citado Código exige que se mencione por su nombre al "agente de justicia", aunque puede, desde luego, mencionársele, y por el contrario, el Art. 508 al ofrecer un modelo de cómo deben ser las órdenes, provee que "La orden de registro o allanamiento debe estar concebida sustancialmente en la forma siguiente:

'Distrito de . . . . . . . .

'El Pueblo de Puerto Rico a *cualquier* alguacil, policía, agente de orden público, agente de rentas internas, o inspector de contribución sobre ingresos, en el distrito de . . .' (Enfasis suplido.) La orden impugnada en este caso iba dirigida a "cualquier Agente del Orden Público, Detective o Policía en el Distrito de Mayagüez . . ." Dicha orden es suficiente. Fricke, *California Criminal Procedure*, 1955, pág. 45; Cornelius, *The Law of Search and Seizure*, 1926, págs. 361–365; *Williams* v. *State*, 240 P.2d 1132, 1139–1140 (Okla. 1952).

██ Los apelantes también objetan la orden porque el policía López incurrió en contradicciones tanto en la declaración jurada como en la silla testifical. Hemos examinado ambas declaraciones y no existe razón para alterar la apreciación de la prueba que hizo el juez sentenciador. Se trata de una contradicción sobre la fecha del diligenciamiento que fue explicada satisfactoriamente.

██ Se nos dice, finalmente, que debió anularse la orden debido a las actuaciones del testigo del Pueblo, Emilio Torres. Lo sucedido es que el policía López diligenció la orden en compañía del cabo Torres y firmó el diligenciamiento por haberse

ocupado físicamente de efectuar la labor. Torres en la vista sobre la moción de supresión de evidencia también asumió la responsabilidad por el diligenciamiento debido a su condición de superior jerárquico de López. No hay razón alguna para anular la orden por ese motivo.

*Se confirmará la sentencia apelada.*