Antonio J. Fas Alzamora, por sí y como Senador del Estado Libre Asociado de Puerto Rico, demandante y peticionario, *v.* Pedro Rosselló González, Gobernador del Estado Libre Asociado de Puerto Rico, demandado y recurrido.

Número: CC-2000-159      Resuelto: 26 de abril de 2000

*René Arrillaga Armendáriz, Arturo Dávila* y *Héctor Grau Ortiz,* abogados de la parte peticionaria; *Gustavo A. Gelpí, Procurador General,* y *Karen Pagán Pagán, Procuradora General Auxiliar,* abogados de El Pueblo.

## RESOLUCIÓN

A la solicitud de *certiorari* presentada en este caso, *no ha lugar.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados Señores Negrón García, Rebollo López y Fuster Berlingeri expedirían. Los Jueces Asociados Señores Negrón García y Fuster Berlingeri emitieron votos disidentes por separado.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Voto disidente del Juez Asociado Señor Negrón García.

Con vista a un análisis de los planteamientos discutidos por las partes en sus distintos escritos presentados ante el Tribunal de Primera Instancia y el Tribunal de Circuito de Apelaciones, *por su importancia y urgencia públicas, sin*

*ulterior trámite, expediríamos inmediatamente el recurso, revocaríamos y concederíamos el "mandamus" contra el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Pedro Rosselló González.*

## I

En lo procesal, nuestra Constitución —distinto a su contraparte federal— tiene la peculiaridad de garantizar expresamente la elección de minorías a la Asamblea Legislativa, asignándoles el importante papel democrático de fiscalizar activamente a las mayorías. Limitar esa función únicamente al escenario legislativo es, *per se*, recortarles esa misión tan vital y trascendental.

Reiteramos, pues, nuestra convicción de que los legisladores poseen *legitimación activa constitucional*, mucho más amplia que la que ha prevalecido en la jurisdicción federal y en el seno de este Tribunal desde *Hernández Torres v. Gobernador*, 129 D.P.R. 678, 680–681 (1991). Así lo hemos hecho constar en toda decisión posterior; la más reciente, *Acevedo Vilá v. Corrada Del Río*, 138 D.P.R. 886 (1995).

Según esta premisa, no debió negársele acceso judicial al Senador Antonio J. Fas Alzamora, quien el 3 de noviembre de 1998, solicitó del Tribunal de Primera Instancia, Sala Superior de San Juan, un *mandamus* contra el Gobernador honorable Rosselló González, en el que se le ordenaba restituir el nombre *Estado Libre Asociado de Puerto Rico* —sustituido por *Gobierno de Puerto Rico*— en los documentos y las comunicaciones oficiales de la Rama Ejecutiva.[1]

A tono con esta visión, sostenemos que incidió el reputado Tribunal de Circuito de Apelaciones (Hons. Rossy

---

[1] Pidió, además, que se le ordenara requerir a los jefes de agencias, departamentos, corporaciones, instrumentalidades públicas y alcaldes acatar dicho mandato, extensivo a los documentos, sobres, membretes, escritos y anuncios oficiales, así como en expresiones orales, escritas y electrónicas.

García, González Rivera y Ortiz Carrión, Jueces), al resolver que el Senador Fas Alzamora carecía de legitimación activa. De ese modo confirmó la desestimación decretada por el tribunal de instancia (Hon. Carmen Rita Vélez Borrás, Juez), que denegó el *mandamus* por el *sólo y distinto fundamento* de que no existía en ley deber ministerial expreso que atara al Gobernador y el asunto se reducía a una determinación discrecional de política pública no ejecutable vía judicial.

## II

*En los méritos, estamos ante una cuestión pura de interpretación de derecho constitucional, en virtud de la cual procede el "mandamus".*

"El Derecho constitucional —escribe Sánchez Agesta— tiene un estilo propio que trasciende en formas gramaticales características."

*"Los verbos propios de la vinculación o de la permisión jurídica, poder, exigir, deber, estar obligado o tener derecho, o cualquier otro verbo en los tiempos de futuro, que son las formas gramaticales específicas de la técnica jurídica, aparecen eclipsados por los tiempos de presente y el valor sustantivo del verbo ser con su carácter constitutivo y definidor.* Los tiempos de futuro aparecen también con frecuencia, pero para expresar realizaciones concretas en un tiempo real; esto es, un programa o un fin a realizar y no la consecuencia de una situación jurídica hipotética. La constitución adquiere así un empaque especial, una característica gracia declaratoria, o por mejor decir, definidora de lo que un pueblo quiere ser. ..." (Énfasis suplido y en el original.) J. Xifra Heras, *Curso de Derecho Constitucional*, 2da ed., Barcelona, Ed. Bosch, 1957, T. 1, págs. 84–85.

Al amparo de las Leyes Foraker de 1900, Jones de 1917, y nuestro Código Político —*antes de la aprobación de nuestra Constitución en 1952*— no cabe duda de que el nombre oficial del entonces sistema gubernamental era *Gobierno de Puerto Rico.*

*Con la aprobación de la Constitución varió.* Como cuerpo político se constituyó el *Estado Libre Asociado de*

*Puerto Rico*. Art. I, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1. A renglón seguido se vinculó, rubricó e identificó colectivamente, a modo análogo de nombre y apellido propio, como "[e]l *gobierno del Estado Libre Asociado de Puerto Rico*",([2]) (énfasis suplido) organizado de forma republicana, con los poderes clásicos de Ejecutivo, Legislativo y Judicial.([3]) Art.

---

([2]) La Resolución Núm. 22 de la Convención Constituyente, de 4 de febrero de 1952, Documentos Históricos, L.P.R.A., Tomo 1, ed. 1982, pág. 148, resolvió "[q]ue el nombre en español *del cuerpo político creado* ... habría de ser 'Estado Libre Asociado', usando tal frase como equivalente y traducción adecuada en nuestro caso del vocablo inglés '*commonwealth*'". (Énfasis suplido.)

([3]) Más adelante, el Art. VI, Sec. 15, Const. E.L.A., L.P.R.A., Tomo 1, provee para una bandera, un himno, un escudo y un gran sello del *Estado Libre Asociado de Puerto Rico* y, finalmente, el Art. IX, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 387, establece que "[e]l *Estado Libre Asociado de Puerto Rico será sucesor de 'El Pueblo de Puerto Rico'* ha todos los efectos, incluyendo, pero sin que se entienda como una limitación, el voto y el pago de deudas y obligaciones de acuerdo con los términos de las mismas". (Énfasis suplido.) Cónsono, la Sec. 5 del Art. IX, Const. E.L.A., Tomo 1, ed. 1982, pág. 387, expresa que "[e]n lo sucesivo la expresión 'ciudadano *del Estado Libre Asociado de Puerto Rico' sustituirá a la expresión 'ciudadano de Puerto Rico'* según ésta ha sido usada antes de esta Constitución". (Énfasis suplido.)

Este nuevo orden constitucional exigió que la Asamblea Legislativa enmendara distintas disposiciones legales para atemperarla a la nueva realidad político jurídica y la nueva denominación de Estado Libre Asociado de Puerto Rico.Entre los cambios encontramos la derogación de los Arts. 2 y 3 del Código Político de 1902. El primero, que disponía que los departamentos ejecutivos, legislativos y judicial, según organizados por la ley orgánica, constituirían el *Gobierno de Puerto Rico*, fue sustituido en el Art. 1, Sec. 2 de la Constitución, L.P.R.A., Tomo 1, al establecer la forma republicana del Estado Libre Asociado de Puerto Rico. El segundo, que definía la jurisdicción territorial del gobierno, se cambió por el Art. 1, Sec. 3, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 256, estableciéndose que la "autoridad política del Estado Libre Asociado de Puerto Rico se extendería a la Isla de Puerto Rico y a las islas adyacentes dentro de su jurisdicción".

El Art. 393 del Código Político de 1902 fue enmendado a los fines de disponer que el Secretario de Transportación y Obras Públicas tendrá a su cargo "todos los edificios públicos pertenecientes al *Estado Libre Asociado de Puerto Rico*". (Énfasis suplido.) 3 L.P.R.A. sec. 417. Establece, además, que "[e]stará encargado así mismo de toda la propiedad cedida por el Gobierno de España al de los Estados Unidos, y cuya administración se puso en manos del Gobierno de Puerto Rico con arreglo a la Sección 13 de la Ley del Congreso denominada 'Ley para proveer, temporalmente, de rentas y un gobierno civil a la Isla de Puerto Rico y para otros fines'". La Ley Núm. 18 de 23 de abril de 1954, según enmendada, 3 L.P.R.A. ant. sec. 831, sustituye la "Asociación de Empleados del *Gobierno de Puerto Rico*" por la "Asociación de Empleados del Estado Libre Asociado de Puerto Rico", transformando ésta en sucesora y continuadora de la primera. La misma ley define como "empleado" a "todo funcionario o empleado permanente o regular que como tal reciba un sueldo del Gobierno del Estado Libre Asociado de Puerto Rico". Sec. 2 de la Ley Núm. 133 de 28 de junio de 1966 (3 L.P.R.A. sec. 862(a)). La Ley Núm. 246 de 8 de mayo de 1950, según enmendada, 3 L.P.R.A. ant. sec. 511, crea una Oficina del Gobierno de Puerto Rico en Washington, la cual se denominará "Oficina en Washington del Estado Libre Asociado de Puerto Rico", y se establece que toda referencia a la "Oficina del Gobierno de

I, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 256.

*Se trata de una realidad existencial que no puede negarse.* No queda desvirtuada por la referencia que en otras cláusulas, la misma Constitución hace del *"Gobierno de Puerto Rico"*. Art. II, Sec. 20; Art. III, Sec. 15, y Art. IV, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1. Tampoco por las múltiples leyes que en diversos momentos ha aprobado la Asamblea Legislativa, citadas por el demandado honorable Rosselló González[4] para sostener su respetable tesis principal de que puede utilizar indistintamente *Gobierno de Puerto Rico,* salvo cuando hace referencia al estatus u organización política vigente.

*Primero,* la palabra *gobierno* simplemente significa "acción y efecto de gobernar". *Diccionario de la Lengua Española,* 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I, pág. 692. *Gobierno de Puerto Rico* es una *forma de expresión genérica* que, según indicado, aparece en la Constitución y en algunas leyes. Excepto la referencia al nombre de Puerto Rico, *como frase, despersonaliza. No tiene por sí sola elemento de identificación, cualidad ni fundamento jurídico del ente principal que la constituyó y al cual pertenece el gobierno. Estamos ante una expresión nominal, aislada e incompleta, que por su carácter genérico no posee el vínculo que acredita integralmente su verdadero rango oficial gubernamental. Sólo considerada en conjunto, Go-*

---

Puerto Rico en Washington" se entenderá que hace referencia a la "Oficina en Washington del Estado Libre Asociado de Puerto Rico". En la Ley de Retiro del Personal del Gobierno, el texto de la ley incorpora, como definición a los fines de dicha ley, que el "Gobierno de Puerto Rico" o el término "Gobierno" significará "el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias, divisiones, negociados, oficinas, agencias y dependencias". Art. 3 de la Ley Núm. 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. sec. 763.

[4] Art. 2 de la Ley Núm. 125 de 13 de julio de 1960 (1 L.P.R.A. sec. 14); Art. 1(b) de la Ley Núm. 69 de 8 de junio de 1979 (3 L.P.R.A. sec. 935(b)); Ley Núm. 230 de 23 de julio de 1974 (3 L.P.R.A. secs. 283–283p); Ley de Marcas, Ley Núm. 63 de 14 de agosto de 1961 (17 L.P.R.A. ant. sec. 77*n*); Ley de la Administración de Asuntos Federales de Puerto Rico, Ley Núm. 77 de 19 de junio de 1979 (3 L.P.R.A. sec. 1701 *et seq.*); Ley del Sistema de Retiro, Ley Núm. 447 de 15 de mayo de 1951 (3 L.P.R.A. sec. 761 *et seq.*); Ley sobre dos idiomas, Ley Núm. 1 de 28 de enero de 1993 (1 L.P.R.A. sec. 59 *et seq.*).

*bierno del Estado Libre Asociado de Puerto Rico*[5] —*compuesto por sus tres (3) poderes constitucionales, agencias, corporaciones públicas, municipios, etc.— transmite, designa y describe material y visiblemente, como representación gráfica, el todo de la afirmación democrática ciudadana que aprobó la Constitución. Únicamente entonces hace sentido, identifica y se pone en ejecución el nombre oficial del Gobierno, según manda la Sec. 2 del Art. I de nuestra Constitución*, L.P.R.A., Tomo 1.

*Segundo*, jurídicamente hablando, no cabe la tesis de desdoblar la "administración" del "Gobierno" del "Estado Libre Asociado de Puerto Rico".

Ese no es el diseño constitucional prevaleciente. En países de tradición parlamentaria existe una bifurcación institucional entre el jefe del Estado y el jefe del Gobierno. Así en Inglaterra y Holanda, la reina es jefa del Estado, en España y Bélgica es el rey, en Alemania, Francia o Israel, el presidente. La jefatura del Estado tiene tradicionalmente los roles de representar a la nación, ejercer la soberanía y nombrar un gobierno que administre al país. A la jefatura del Gobierno —que es de la incumbencia del primer ministro o canciller— le corresponde la gestión interna de administración, la configuración del gabinete, la elaboración y ejecución de la obra pública.

Nuestra Constitución, sin embargo, adoptó para la configuración de su ejecutivo, el sistema presidencial norteamericano, que difiere del parlamentario precisamente *en la indivisibilidad del órgano ejecutivo*. Véase *The Federalist*, Núms. 69 y 70, págs. 415–431 (A. Hamilton ed. 1966). *Ambas jefaturas, Estado y del Gobierno, corresponden —indistintas e indiferenciadas— al Gobernador del Estado Libre Asociado de Puerto Rico.*

Antes de la Constitución era correcto afirmar que el Gobernador de Puerto Rico era meramente un jefe de go-

---

[5] En estricto análisis sintáctico, *"del Estado Libre Asociado"*, es el núcleo; *"de Puerto Rico"*, la frase preposicional de este núcleo.

bierno, nombrado por la voluntad del Presidente de Estados Unidos, quien era el verdadero jefe de Estado. La concesión de un importante renglón de la soberanía al pueblo de Puerto Rico en la Ley Púb. Núm. 600 de 3 de julio de 1950 (64 Stat. 314), Documentos Históricos, L.P.R.A., Tomo 1, y la Constitución, así como su elección por voto popular, confirió al Gobernador del Estado Libre Asociado de Puerto Rico *el carácter de jefe de un ejecutivo indiviso.* Es extraño, pues, y no podemos fraccionar el carácter integral de su función ejecutiva (Jefe de Estado y Gobierno).

## III

Ese fue el modo en que quedó instituida la voluntad del pueblo. *Ésta es la denominación oficial completa de la presente entidad política gubernamental, que deberá subsistir hasta tanto, a través de los mecanismos constitucionales, se enmiende.* Por su origen constitucional corresponde al pueblo,[6] no a sus funcionarios cuatreniales, decidir y cambiarlo. Mientras tanto, ningún funcionario está en libertad de modificarlo basado en juicios individuales o colectivos, por respetables que sean, ajenos o no a los criterios políticos partidistas.

Este mandato implica que toda comunicación escrita o análoga (documento, sobre, membrete, letrero, tarjeta de presentación o anuncio gubernamental) en español —*para ser oficial, completa y legal, y por ende, susceptible de ser legítimamente sufragado con fondos públicos*— no puede divorciarse del *título Estado Libre Asociado.* Su proyección e interpretación se extiende a las tres (3) ramas de gobierno, municipios, agencias, y demás instrumentalidades, y, claro está, a sus funcionarios. No importa la forma que sea, debe identificarse toda gestión gubernamental y pú-

---

(6) No ignoramos las diversas posiciones en favor y en contra del actual estatus político. Ello, es un asunto que pertenece al propio al debate de la arena política.

blica con el nombre *Estado Libre Asociado*; si es en el idioma inglés, *Commonwealth of Puerto Rico.*

## IV

Al igual que los demás funcionarios, el Gobernador honorable Rosselló González, juró fidelidad y defender *la Constitución del Estado Libre Asociado de Puerto Rico.*([7]) Sin embargo, no es un funcionario más, sino el Primer Ejecutivo o Primer Ciudadano de investidura pública en el país. Entre las prerrogativas expresamente contenidas en el Art. IV, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1, están ejercer las otras facultades y atribuciones propias de su cargo y cumplir los demás deberes que le *impone la Constitución* u otras leyes. Se configura así claramente el deber ministerial reclamado de utilizar el nombre oficial del "*Gobierno*", que por *mandato Constitucional, es "del Estado Libre Asociado de Puerto Rico".*

*Según indicado, este deber ministerial se deriva expresamente del citado Art. II, Sec. 2 de nuestra Constitución que, por antonomasia, es la Ley Fundamental, supranorma comunitaria.* Contrario a lo que estimó la ilustrada sala de instancia, su cumplimiento es *autoejecutable*; no requiere de ninguna ley aprobada por la Asamblea Legislativa. *Hernández Agosto v. López Nieves*, 114 D.P.R. 601 (1983). A fin de cuentas, los poderes restantes —Legislativo y Judicial— estamos también obligados a acatar la Constitución.

---

([7]) El Art. VI, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 377, dispone:

"*Todos* los funcionarios y empleados *del Estado Libre Asociado*, sus agencias, instrumentalidades y subdivisiones políticas prestarán, antes de asumir las funciones de sus cargos, juramento de fidelidad a la Constitución de los Estados Unidos de América y a la Constitución del Estado Libre Asociado de Puerto Rico." (Énfasis suplido.)

— O —

Voto disidente emitido por el Juez Asociado Señor Fuster Berlingeri.

I

En el caso de autos existe legitimación activa por parte del peticionario para dilucidar judicialmente el asunto de que trata dicho caso.([1]) Ello es así tanto por las razones que ha expuesto el Juez Asociado Señor Negrón García en su propio voto disidente, como por los fundamentos sobre el particular expresados por el Tribunal de Primera Instancia en su sentencia.

Además, debe tenerse en cuenta cuál es el asunto realmente ante nos. Como expresara un distinguido miembro de este Foro en *Pueblo v. Luciano Arroyo*, 83 D.P.R. 573 (1961), los jueces no debemos ser tan inocentes como para creer lo que nadie más cree. Con respecto al asunto de autos, no puede haber duda alguna de que la razón por la cual el actual Gobernador del Estado Libre Asociado de Puerto Rico se niega a identificar los documentos y las comunicaciones oficiales de la Rama Ejecutiva con el nombre propio del cuerpo político que le confiere su autoridad, es que dicho Gobernador es un *adversario* de ese particular cuerpo político y su desprecio por éste lo lleva al extremo de negarse a utilizar su nombre propio en los documentos oficiales. En cambio, el peticionario en el caso de autos es un conocido partidario del cuerpo político vigente, mediante el cual se organiza constitucionalmente el pueblo puertorriqueño. Por lo tanto, tiene un interés palpable en que se respete el cuerpo político en cuestión utilizándose su

---

([1]) En este recurso el peticionario ha cuestionado la práctica del Gobernador Rosselló y la Rama Ejecutiva de utilizar el nombre "Gobierno de Puerto Rico", en lugar del "Estado Libre Asociado de Puerto Rico" en sus documentos y comunicaciones oficiales.

nombre propio como es debido en los documentos oficiales. En términos jurídicos objetivos no puede haber duda alguna de que el peticionario tiene legitimación activa en el caso de autos.

## II

El Art. I, Sec. 1 de la Constitución del Estado Libre Asociado de Puerto Rico dispone que mediante esa Constitución *"se constituye el Estado Libre Asociado de Puerto Rico"*. (Énfasis suplido.) L.P.R.A., Tomo 1, ed. 1982, pág. 252. Durante las discusiones que se llevaron a cabo en la Asamblea Constituyente de Puerto Rico sobre este particular se hizo claro que el pueblo de Puerto Rico, al adoptar dicha Constitución, se organizaba como un Estado Libre Asociado y que el nombre propio de ese ente jurídico que se estaba instaurando sería precisamente el de "Estado Libre Asociado de Puerto Rico". 2–4 Diario de Sesiones de la Asamblea Constituyente, págs. 1119, 1124, 1126, 1200, 1203–1206, 1217–1218, 1222, 1893, 1895, 2359, 2364, 2381–2387 y 2391 (1961). Por esa razón, en la Resolución Núm. 22 de 4 de febrero de 1952, la Asamblea Constituyente claramente expresó *"que el nombre en español del cuerpo político creado en virtud de la Constitución que por esta Convención se adopta ... habrá de ser 'Estado Libre Asociado de Puerto Rico' "*. (Énfasis suplido.) 4 Diario de Sesiones, *supra*, pág. 2354.

Más aún, ya antes habíamos resuelto que el nombre del cuerpo político bajo cuya autoridad actúan los funcionarios públicos del país es el de "Estado Libre Asociado de Puerto Rico". Señalamos entonces que el "Estado Libre Asociado de Puerto Rico" es el sucesor constitucional del "Pueblo de Puerto Rico". *Pueblo v. Vélez López*, 83 D.P.R. 486 (1961).

A la luz de todo lo anterior, es incuestionable que el nombre propio del cuerpo político que le confiere a los funcionarios públicos del país la autoridad que éstos ejercen es

el de *"Estado Libre Asociado de Puerto Rico"*. Por ende, las autoridades públicas que ejercen sus funciones precisamente en nombre del Estado Libre Asociado de Puerto Rico tienen el deber evidente de identificar los documentos y las comunicaciones oficiales utilizando el nombre propio del cuerpo político que es la fuente de la autoridad que ejercen. No tiene discreción el Gobernador para promover sus propias creencias partidistas al extremo de negarse a usar en asuntos oficiales el nombre propio del cuerpo político que le confiere su autoridad como Gobernador. Es el Estado Libre Asociado de Puerto Rico el que le confiere al Gobernador Rosselló la autoridad que él ejerce como Primer Mandatario del país. El frívolo comportamiento consistente en identificar los documentos y las comunicaciones oficiales a nombre del "Gobierno de Puerto Rico" constituye no sólo un menoscabo ilícito del orden constitucional vigente en Puerto Rico, sino que es, además, un uso político partidista indebido de las prerrogativas de su cargo.

Por las razones anteriormente expuestas, no logro comprender cómo una mayoría de este Tribunal se ha negado a expedir el recurso solicitado en el caso de autos, cuyos méritos procesales y sustantivos realmente son indiscutibles. Por eso disiento de la decisión mayoritaria, que abdica con un escueto y lamentable "no ha lugar" su responsabilidad en este asunto.