EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Antonio J. Fas Alzamora, por sí y como Senador del Senado del Estado Libre Asociado de Puerto Rico<br>      Peticionario<br><br>      v.<br><br>Hon. Pedro Rosello González, Gobernador del Estado Libre Asociado de Puerto Rico.<br>      Recurrido | Certiorari<br><br>2000 TSPR 62 |

Número del Caso: CC-2000-0159

Fecha: 26/04/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Rafael Ortiz Carrión

Abogados de la Parte Peticionaria:

                  Lcdo. René Arrillaga Armendariz
                  Lcdo. Héctor Grau Ortiz
                  Lcdo. Arturo Dávila

Abogados de la Parte Recurrida:

                  Lcdo. Gustavo A. Gelpí
                  Sub-Procuradora General
                  Lcda. Karen Pagán Pagán
                  Procuradora General Auxiliar

Materia:

      Este documento constituye un documento oficial del Tribunal
      Supremo que está sujeto a los cambios y correciones del
      proceso de compilación y publicación oficial de las
      decisiones del Tribunal. Su distribución electrónica se hace
      como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio J. Fas Alzamora, por sí
y como Senador del E.L.A. de
Puerto Rico

    Demandante-Peticionario

                                    CC-2000-159     Certiorari

    vs.

Pedro Rosselló González, Gob.
del Estado Libre Asociado de
Puerto Rico

    Demandado-Recurrido

RESOLUCION

San Juan, Puerto Rico, a 26 de abril de 2000.

A la solicitud de certiorari presentada en este caso, no ha lugar.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Negrón García, Rebollo López y Fuster Berlingeri expedirían. Los Jueces Asociados señores Negrón García y Fuster Berlingeri emitieron votos disidentes por separado.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio J. Fas Alzamora, Ppor Ssí
y como Senador del E.L.A. de
 P.uerto R.ico

    Demandante-Peticionario

          vs.                CC-2000-159     Certiorari
                 CC-2000-159     Certiorari

Pedro Rosselló González, Gob. del
del Estado Libre Asociado de
 P.uerto R.ico

    Demandado-Recurrido

Voto Disidente emitido por el Juez Asociado señor FUSTER BERLINGERI.

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 26 de abril de 2000.

I

En el caso de autos existe legitimación activa de parte del peticionario para dilucidar judicialmente el asunto de que trata dicho caso.[1] Ello es así tanto por las razones que ha expuesto el Juez Asociado señor Negrón García en su propio voto disidente, como por los fundamentos sobre el particular expresados por el

---

[1] En este recurso el peticionario ha cuestionado la práctica del Gobernador Rosselló y la Rama Ejecutiva de utilizar el nombre "Gobierno de Puerto Rico" en lugar del "Estado Libre Asociado de Puerto Rico" en sus documentos y comunicaciones oficiales.

tTribunal de Primera iInstancia sobre el particularen su sentencia.

Además, debe teneromarse en cuenta cuál es el asunto realpropiamente ante nos. Como expresara un distinguido miembro de este Foro en Pueblo v. Luciano Arroyol, 83 D.P.R. 573 (1961)., L los jueces no debemos ser tan inocentes como para creer lo que nadie más cree. Con respecto al asunto de autos, no puede haber duda alguna que la razón por la cual el Gobernador de Puerto Rico se niega a identificar los documentos y comunicaciones oficiales de la Rama Ejecutiva con el nombre propio del

inocentes como para creer lo que nadie más cree. Con respecto al asunto de autos, no puede haber duda alguna de que la razón por la cual el actual Gobernador del Estado Libre Asociado de Puerto Rico se niega a identificar los documentos y comunicaciones oficiales de la Rama Ejecutiva con el nombre propio del cuerpo político que le confiere su autoridad, es que dichole Gobernador es un **adversario** de ese particular cuerpo político y su desprecio por el mismo éste lo lleva al extremo de negarse a utilizar su nombre propio en los documentos oficiales. En cambio, el peticionario en el caso de autos es un conocido partidiario del cuerpo político vigente mediante el cual se organiza constitucionalmente el pueblo puertorriqueño.  y pPor tanto, tiene un interés palpable en que se respete el cuerpo político en cuestión utilizándose sue nombre propio como es debido en los documentos oficiales. En términos jurídicos objetivos no puede haber duda alguna de que el peticionario tiene legitimación activa en el caso de autos.

II

El Artículo I, sSección 1, de la Constitución del Estado Libre Asociado de Puerto Rico dispone que con la adopciónmediante de esa Constitución **"se constituye el Estado Libre Asociado de Puerto Rico"**. Durante las discusiones que se llevantaron a cabo en la Asamblea Constituyente de Puerto Rico sobre este particular se hizo claro que el ppueblo de Puerto Rico, al adoptar dicha Constitución, se organizaba como un Estado Libre Asociado y que el nobrenombre propio de ese ente

jurídico que se estaba instaurando sería precisamente el de "Estado Libre Asociado de Puerto Rico". <u>Diario de Sesiones de la Asamblea Constituyente</u>, 1961, a las páginas 1119, 1124, 1126, 1200, 1203-1206, 1217-1218, 1222, 1893, 1895, 2359, 2364, 2381-2387 y 2391. Por esa razón, en la Resolución Núm. 22 de 4 de febrero de 1952, la Asamblea Constituyente claramente expresó **"que el nombre en español del cuerpo político creado en virtud de la Constitución que por esta Convención se adopta... habrá de ser 'Estado Libre Asociado de Puerto Rico'"**. <u>Diario de Sesiones de la Asamblea Constituyente</u>, a la página 2354.

Más aun, ya antes habíamos resuelto que el nombre del cuerpo político bajo cuya autoridad actúan los funcionarios públicos del país es el de "Estado Libre Asociado de Puerto Rico". Señalamos entonces que el "Estado Libre Asociado de Puerto Rico" es el sucesor constitucional del "Pueblo de Puerto Rico". <u>Pueblo v. Vélez López</u>, 83 D.P.R. 486 (1961).

A la luz de todo lo anterior, es incuestionable que el nombre propio del cuerpo político que le confiere a los funcionarios públicos del país la autoridad que éstos ejercen es el de **"Estado Libre Asociado de Puerto Rico"**. Por ende, las autoridades públicas que ejercen sus funciones precisamente en nombre del Estado Libre Asociado de Puerto Rico tienen el deber evidente de identificar los documentos y comunicaciones oficiales utilizando el nombre propio del cuerpo político que es la fuente de la autoridad que ejercen. No tiene discreción el Gobernador para promover sus propias creencias partidistas al extremo de negarse a usar en asuntos oficiales el nombre

propio del cuerpo político que le confiere su autoridad como Gobernador. Es el Estado Libre Asociado de Puerto Rico el que le confiere al Gobernador Rosselló la autoridad que él ejerce como Primer Mandatario del país. El frívolo comportamiento consistente en identificar los documentos y comunicaciones oficiales a nombre del "Gobierno de Puerto Rico" constituye no sólo un menoscabo ilícito del orden constitucional vigente en

Puerto Rico, sino que es, además, un uso político partidista indebido de las prerrogativas de su cargo.

Por las razones anteriormente expuestas, no logro comprender cómo una mayoría de este Tribunal se ha negado a expedir el recurso solicitado en el caso de autos, cuyos méritos procesales y sustantivos realmente son indiscutibles. Por eso disiento de la decisión mayoritaria, que abdica con un escueto y lamentable "no ha lugar" su responsabilidad en este asunto.

Formatted

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Antonio J. Fas Alzamora, por
sí y como Senador del Senado
del Estado Libre Asociado de
Puerto Rico

   Demandante-Peticionario

        v.                              CC-2000-159      Certiorari

Pedro Rosselló González,
Gobernador del Estado Libre
Asociado de Puerto Rico

   Demandado-Recurrido

Voto Disidente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 26 de abril de 200

    Con vista a un análisis de los planteamientos discutidos por las partes en sus distintos escritos presentados ante el Tribunal de Primera Instancia y el Tribunal de Circuito de Apelaciones, **por su importancia y urgencia pública, sin ulterior trámite, expediríamos inmediatamente el recurso, revocaríamos y concederíamos el <u>mandamus</u> contra el Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Pedro Rosselló González.**

I

    En lo procesal, nuestra Constitución –distinto a su contraparte federal–, tiene la peculiaridad de garantizar expresamente la elección de minorías a

la Asamblea Legislativa, asignándoles el importante papel democrático de fiscalizar activamente a las mayorías. Limitar esa función únicamente al escenario legislativo es, _per se_, recortarles esa misión tan vital y trascendental.

Reiteramos pues, nuestra convicción de que los legisladores poseen **legitimación activa constitucional**, mucho más amplia que la que ha prevalecido en la jurisdicción federal y en el seno de este Tribunal desde Hernández Torres v. Hernández Colón, 129 D.P.R. 678, 680-681 (1991). Así lo hemos hecho constar en toda decisión posterior; la más reciente, Acevedo Vilá v Corrada Del Río, res. en 30 de junio de 1995, 138 D.P.R. ____ 1995.

Bajo esta premisa, no debió negársele acceso judicial al Senador Antonio J. Fas Alzamora, quien el 3 de noviembre de 1998, solicitó del Tribunal de Primera Instancia, Sala Superior de San Juan, mandamus contra el Gobernador Hon. Rosselló González, ordenándole restituir el nombre **"Estado Libre Asociado de Puerto Rico"** -sustituido por **"Gobierno de Puerto Rico"**-, en los documentos y comunicaciones oficiales de la Rama Ejecutiva[2].

A tono con esta visión, sostenemos que incidió el reputado Tribunal de Circuito de Apelaciones (Hons. Rossy

---

[2] Pidió además, se le ordenara requerir a los jefes de agencias, departamentos, corporaciones, instrumentalidades públicas y alcaldes acatar dicho mandato, extensivo a los documentos, sobres, membretes, escritos y anuncios oficiales, así como en expresiones orales, escritas y electrónicas.

García, González Rivera y Ortiz Carrión), al resolver que el Senador Fas Alzamora carecía de legitimación activa. De ese modo confirmó la desestimación decretada por el Tribunal de Instancia (Hon. Carmen Rita Vélez Borrás), que denegó el mandamus por el **sólo y distinto fundamento** de que no existía en ley deber ministerial expreso que atara al Gobernador y el asunto se reducía a una determinación discrecional de política pública no ejecutable vía judicial.

II

**En los méritos, estamos ante una cuestión pura de interpretación de derecho constitucional, en virtud de la cual procede el mandamus.** "El Derecho constitucional –escribe Sánchez Agesta– tiene un estilo propio que trasciende en formas gramaticales características. '**Los verbos propios de la vinculación o de la permisión jurídica, poder, exigir, deber, estar obligado o tener derecho, o cualquier otro verbo en los tiempos de futuro, que son las formas gramaticales específicas de la técnica jurídica, aparecen eclipsados por los tiempos de presente y el valor sustantivo del verbo ser con su carácter constitutivo y definidor.** Los tiempos de futuro aparecen también con frecuencia, pero para expresar realizaciones concretas en un tiempo real; esto es, un programa o un fin a realizar y no la consecuencia de una situación jurídica hipotética. La constitución adquiere así un empaque especial, una característica gracia declaratoria, o por

mejor decir, definidora de lo que un pueblo quiere ser...'" Xifra Heras, <u>Curso de Derecho Constitucional</u>, 1957, T. 1, págs. 84-85.

Bajo las Leyes Foraker de 1900, Jones de 1917, y nuestro Código Político, **-antes de la aprobación de nuestra Constitución en 1952-**, no cabe duda de que el nombre oficial del entonces sistema gubernamental era **"Gobierno de Puerto Rico"**.

**Con la aprobación de la Constitución varió**. Como cuerpo político se constituyó el **Estado Libre Asociado de Puerto Rico** (Art. I, Sec. 1). A renglón seguido se vinculó, rubricó e identificó colectivamente, a modo análogo de nombre y apellido propio, como "[e]l **gobierno del Estado Libre Asociado de Puerto Rico**",[3] organizado de forma republicana, con los poderes clásicos de Ejecutivo, Legislativo y Judicial.[4] (Sec. 2).

---

[3] La **Resolución Núm. 22 de la propia Convención Constituyente** resolvió "que el nombre en español **del cuerpo político creado** ...habría de ser 'Estado Libre Asociado', usando tal frase como equivalente y traducción adecuada en nuestro caso del vocablo inglés 'Commonwealth'". (1 L.P.R.A. sec. 5, pág. 147-149).

[4] Más adelante, el Art. VI, sec. 15 provee para una bandera, himno, escudo y gran sello del **Estado Libre Asociado de Puerto Rico**, y finalmente, el Art. IX, sec. 4 establece que **"[e]l Estado Libre Asociado de Puerto Rico será sucesor de 'El Pueblo de Puerto Rico'** a todos los efectos, incluyendo, pero sin que se entienda como una limitación, el voto y el pago de deudas y obligaciones de acuerdo con los términos de las mismas." Cónsono, la Sec. 5 expresa que "[e]n lo sucesivo la expresión 'ciudadano **del Estado Libre Asociado de Puerto Rico' sustituirá a la expresión 'ciudadano de Puerto Rico'** según ésta ha sido usada antes de esta Constitución."

Este nuevo orden constitucional exigió que la Asamblea Legislativa enmendara distintas disposiciones legales para atemperarla a la nueva realidad político jurídica y nueva denominación de Estado Libre Asociado de Puerto Rico. Entre los

**Se trata de una realidad existencial que no puede negarse.** No queda desvirtuada por la referencia que en otras cláusulas, la misma Constitución hace de **"Gobierno de Puerto Rico"**. (Art. II, Sec. 20; Art. III, Sec. 15, Art. IV, Sec. 10). Tampoco por las múltiples leyes que en diversos momentos ha aprobado la Asamblea Legislativa,

---

cambios encontramos la derogación de los Arts. 2 y 3 del Código Político de 1902. El primero que disponía que los departamentos ejecutivos, legislativos y judicial, según organizados por la Ley Orgánica, constituiría el **Gobierno de Puerto Rico**, fue sustituido en el Art. 1, sec. 2 de la Constitución, al establecer la forma republicana del Estado Libre Asociado de Puerto Rico. El segundo, que definía la jurisdicción territorial del gobierno, se cambió por el Art. 1, sec. 2 estableciéndose que la "autoridad política del Estado Libre Asociado de Puerto Rico se extendería a la Isla de Puerto Rico y a las islas adyacentes dentro de su jurisdicción."

El Art. 393 del Código Político de 1902, fue enmendado a los fines de disponer que el Secretario de Transportación y Obras Públicas tendrá a su cargo "todos los edificios públicos pertenecientes al **Estado Libre Asociado de Puerto Rico"**. Establece además que, "estará encargado así mismo de toda la propiedad cedida por el gobierno de España al de los Estados Unidos, y cuya administración se puso en manos del Gobierno de Puerto Rico con arreglo a la Sección 13 de la Ley del Congreso denominada 'Ley para proveer, temporalmente, de rentas y un gobierno civil a la Isla de Puerto Rico y para otros fines'." La Ley Núm. 18 de 23 de abril de 1954, según enmendada, (3 L.P.R.A. sec. 831), sustituye la "Asociación de Empleados del **Gobierno de Puerto Rico"** por la "Asociación de Empleados del Estado Libre Asociado de Puerto Rico", creando la misma como sucesora y continuadora de la primera. La misma Ley define como "empleado" a "todo funcionario o empleado permanente o regular que como tal reciba un sueldo del Gobierno del Estado Libre Asociado de Puerto Rico." Id., sec. 2, 3 L.P.R.A. sec. 862(a). La Ley Núm. 246 de 8 de mayo de 1950, según enmendada (3 L.P.R.A. sec. 511), crea una Oficina del Gobierno de Puerto Rico en Washington, la cual se denominará "Oficina en Washington del Estado Libre Asociado de Puerto Rico", y se establece que toda referencia a la "Oficina del Gobierno de Puerto Rico en Washington" se entenderá que hace referencia a la "Oficina en Washington del Estado Libre Asociado de Puerto Rico". En la Ley de Retiro del Personal del Gobierno, el texto de la ley incorpora, como definición a los fines de dicha Ley, que el "Gobierno de Puerto Rico" o el término "Gobierno" significará "el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias, divisiones, negociados, oficinas, agencias y dependencias." Ley Núm. 447, de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. sec. 763.

citadas por el demandado Hon. Rosselló González[5] para sostener su respetable tesis principal de que puede utilizar indistintamente **Gobierno de Puerto Rico**, salvo cuando hace referencia al status u organización política vigente.

**Primero**, la palabra **gobierno** simplemente significa "acción y efecto de gobernar". <u>Diccionario Real Academia de la Lengua Española</u>, I (1984), pág. 692. **Gobierno de Puerto Rico** es una **forma de expresión genérica** que, según indicado, aparece en la Constitución y algunas leyes. Excepto la referencia al nombre de Puerto Rico, **como frase, despersonaliza. No tiene por sí sola elemento de identificación, cualidad ni fundamento jurídico del ente principal que la constituyó y al cual pertenece el gobierno. Estamos ante una expresión nominal, aislada e incompleta, que por su carácter genérico no posee el vínculo que acredita integralmente su verdadero rango oficial gubernamental. Sólo considerada en conjunto, <u>Gobierno del Estado Libre Asociado de Puerto Rico</u>[6] –compuesto por sus tres (3) poderes constitucionales,**

---

[5] (Art. 2 de la Ley Núm. 125 de 13 de julio de 1960; Art. 1(b) de la Ley Núm. 69 de 8 de junio de 1979; Ley de Contabilidad Gubernamental, Núm. 230 de 23 de julio de 1974; Ley de Marcas, Núm. 63 de 14 de agosto de 1961, Ley de Administración de Asuntos Federales, Núm. 77 de 19 de junio de 1979; Ley del Sistema de Retiro, Núm. 447 de 15 de mayo de 1951; Ley sobre dos idiomas, Núm. 1 de 28 de enero de 1993).

[6] En estricto análisis sintáctico, **"del Estado Libre Asociado"**, es el núcleo; **"de Puerto Rico"**, la frase preposicional de este núcleo.

**agencias, corporaciones públicas, municipios, etc.-, transmite, designa y describe material y visiblemente, como representación gráfica, el <u>todo</u> de la afirmación democrática ciudadana que aprobó la Constitución. Únicamente entonces hace sentido, identifica y se pone en ejecución el nombre oficial del gobierno, según <u>manda</u> la Sec. 2 del Art. I de nuestra Constitución.**

**Segundo**, jurídicamente hablando, no cabe la tesis de desdoblar la "administración" del "Gobierno" del "Estado Libre Asociado de Puerto Rico".

Ese no es el diseño constitucional prevalenciente. En países de tradición parlamentaria existe una bifurcación institucional entre el jefe del estado y el jefe del gobierno. Así en Inglaterra y Holanda, la reina es jefa del estado, en España y Bélgica es el rey, en Alemania, Francia o Israel, el presidente. La jefatura del estado tiene tradicionalmente los roles de representar a la nación, ejercer la soberanía y nombrar un gobierno que administre al país. A la jefatura del gobierno –que es de la incumbencia del primer ministro o canciller-, corresponde la gestión interna de administración, la configuración del gabinete, la elaboración y ejecución de la obra pública.

Nuestra Constitución sin embargo, adoptó para la configuración de su ejecutivo, el sistema presidencial norteamericano, que difiere del parlamentario precisamente **en la indivisibilidad del órgano ejecutivo.** Ver <u>The Federalist</u>, Núm. 69 y 70 (Hamilton). **Ambas jefaturas, estado y del gobierno, corresponden –indistintas e indiferenciadas- al Gobernador <u>del</u> Estado Libre Asociado de Puerto Rico.**

Antes de la Constitución era correcto afirmar que el Gobernador de Puerto Rico era meramente un jefe de gobierno, nombrado por la voluntad del Presidente de los

Estados Unidos, quien era el verdadero jefe de estado. La concesión de un importante renglón de la soberanía al pueblo de Puerto Rico en la Ley 600 y la Constitución, así como su elección por voto popular, confirió al Gobernador del Estado Libre Asociado de Puerto Rico **el carácter de jefe de un ejecutivo indiviso**. Es extraño pues, y no podemos entonces, fraccionar el carácter integral de su función ejecutiva. (Jefe de estado y gobierno).

### III

Ese fue el modo en que quedó instituida la voluntad del pueblo. **Ésta es la denominación oficial completa de la presente entidad política gubernamental, que deberá subsistir hasta tanto, a través de los mecanismos constitucionales, se enmiende**. Por su origen constitucional corresponde al pueblo,[7] no sus funcionarios cuatreniales, decidir y cambiarlo. Mientras tanto, ningún funcionario está en libertad de modificarlo basado en juicios individuales o colectivos, por respetables que sean, ajenos o no a los criterios políticos partidistas.

Este mandato implica que toda comunicación escrita o análoga (documento, sobre, membrete, letrero, tarjeta de presentación o anuncio gubernamental) en español, –**para ser oficial, completa y legal, y por ende, <u>susceptible de ser legítimamente sufragado con fondos públicos</u>**–, no puede divorciarse del **título Estado Libre Asociado**. Su proyección

---

[7] No ignoramos las diversas posiciones en favor y en contra del actual status político. Ello, es asunto que pertenece al propio al debate de la arena política.

e interpretación se extiende a las tres ramas de gobierno, municipios, agencias, y demás instrumentalidad, y claro está, a sus funcionarios. No importa la forma que sea, debe identificarse toda gestión gubernamental y pública con el nombre **Estado Libre Asociado**; si es en el idioma inglés, **"Commonwealth of Puerto Rico"**.

IV

Al igual que los demás funcionarios, el Gobernador Hon. Rosselló González, juró fidelidad y defender **la Constitución del Estado Libre Asociado de Puerto Rico**.[8] Sin embargo no es un funcionario más, sino el Primer Ejecutivo o Primer Ciudadano de investidura pública en el país. Entre las prerrogativas expresamente contenidas en el Art. IV,

---

[8] El Art. VI, Sección 16, dispone:

"**Todos** los funcionarios y empleados **del Estado Libre Asociado**, sus agencias, instrumentalidades y subdivisiones políticas prestarán, antes de asumir las funciones de sus cargos, juramento de fidelidad a la Constitución de los Estados Unidos de América y a la Constitución del Estado Libre Asociado de Puerto Rico".

Sec. 4, están ejercer las otras facultades y atribuciones propias de su cargo y, **cumplir los demás deberes que le impone la Constitución u otras Leyes**. Se configura así claramente el deber ministerial reclamado de utilizar el nombre oficial del **"Gobierno"**, que por **mandato Constitucional, es "del Estado Libre Asociado de Puerto Rico"**.

**Según indicado, este deber ministerial se deriva expresamente del Art. II, sec. 2 de nuestra Constitución que, por antonomasia, es la Ley Fundamental, supranorma comunitaria.** Contrario a lo que estimó la ilustrada sala de instancia, su cumplimiento es **autoejecutable;** no requiere de ninguna ley aprobada por la Asamblea Legislativa. Hernández Agosto v. López Nieves, 114 D.P.R. 601 (1983). A fin de cuentas, los poderes restantes –Legislativo y Judicial– estamos también obligados a acatar la Constitución.


                    ANTONIO S. NEGRÓN GARCÍA
                         Juez Asociado